

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Martin C. Ashman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6649 | **DATE** | 7/1/2002 |
| **CASE TITLE** | Alden Town Manor Nursing Center vs. Tommy G. Thompson | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1) .   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter memorandum opinion and order. Plaintiff's motion for summary judgment [11-1] and to set aside defendant's PRRB decision [11-2] is denied. Defendant's motion for summary judgment [14-1] is granted. The Secretary's final decision is affirmed.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUL 2 2002 | |
| | Notified counsel by telephone. | | date docketed | 21 |
| | Docketing to mail notices. | | AP | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 7/1/2002 | |
| | | | date mailed notice | |
| IS | courtroom deputy's initials | | IS | |
| | | | mailing deputy initials | |



DOCKETED
JUL 2 2002

| | |
|---|---|
| ALDEN TOWN MANOR NURSING CENTER, | )<br>)<br>) |
| Plaintiff, | ) Case No. 01 C 6649<br>) |
| v. | ) Magistrate Judge<br>) Martin C. Ashman |
| TOMMY G. THOMPSON, Secretary of Health and Human Services, | )<br>)<br>) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Alden Town Manor Nursing Center seeks judicial review of the Secretary's final decision denying Alden Town's request for an exception to the routine cost limits under Medicare law. The Provider Reimbursement Review Board (the "PRRB") denied Alden Town's request for an exception to the routine cost limits because Alden Town's request was untimely pursuant to 42 C.F.R. § 413.30(c). Alden Town maintains that the PRRB's denial was based on an erroneous interpretation of 42 C.F.R. § 413.30(c). Alternatively, assuming the PRRB's interpretation was correct, Alden Town contends that the PRRB erred by enforcing 42 C.F.R. § 413.30(c) against Alden Town because the PRRB's interpretation of the regulation was not published. Finally, even if the PRRB correctly interpreted and applied 42 C.F.R. § 413.30(c), Alden Town contends that the PRRB erred by not waiving Alden Town's noncompliance with the applicable time limit.

For the following reasons, this Court grants the Secretary's motion for summary judgment and denies Alden Town's motion for summary judgment. The Secretary's final decision is affirmed.[1]

## I. Background

At all relevant times, Alden Town, a 249-bed nursing facility in Cicero, Illinois, participated in the Medicare program. In general, Alden Town agreed to provide certain health care services to Medicare beneficiaries so long as Alden Town received reimbursement from the Secretary for the costs of such services. Alden Town's reimbursement was subject to routine cost limits identified under Medicare law.[2]

Around May 31, 1997, Alden Town submitted a cost report to AdminaStar Federal, the agent of the Secretary responsible for reviewing cost reports and determining appropriate reimbursements. The cost report indicated the actual costs incurred by Alden Town as a result of providing certain health care services to Medicare beneficiaries during the fiscal year ending December 31, 1996. AdminaStar reviewed Alden Town's cost report and subsequently issued a *Notice of Program Reimbursement* dated August 13, 1999; the notice was sent to Alden Town via certified mail that same day. (R. at 138, 148.) The notice indicated adjustments made by AdminaStar to Alden Town's cost report, explained the reasons for making adjustments to Alden Town's cost report—namely, that certain routine cost limits applied—and notified Alden Town

---

[1] The parties have consented to have this Court conduct any and all proceedings, including the entry of final judgment. *See* 28 U.S.C. § 636(c); Local R. 73.1(b).

[2] The routine cost limits function as caps on the costs reimbursed by the Secretary under the Medicare system. *See Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 404-06 (1993) (providing an overview of the Medicare reimbursement system).

that it had "180 days from the date of this [*Notice of Program Reimbursement*]" to file an objection to any of the adjustments. (R. at 139.) Alden Town received AdminaStar's *Notice of Program Reimbursement* on August 16, 1999. (R. at 148; Pl.'s Mem. Supp. Summ. J. at 10.)

In a letter dated and mailed on Saturday, February 12, 2000, Alden Town requested an exception to the routine cost limits for providing atypical services to Medicare beneficiaries. That is, Alden Town mailed its request for an exception to the routine cost limits 180 days from the date it actually received the *Notice of Program Reimbursement*, but 183 days from the date actually on the notice. Upon receipt of Alden Town's letter, AdminaStar denied Alden Town's request because Alden Town did not file its request within "180 days from the date of . . . [the] *Notice of Program Reimbursement*." (R. at 152.) AdminaStar relied on 42 C.F.R. § 413.30(c).

Shortly thereafter, on March 1, Alden Town appealed AdminaStar's decision to the PRRB. (R. at 494-95.) Alden Town first argued that the phrase "notice of program pay," as used in 42 C.F.R. § 413.30(c), could not be interpreted to mean "notice of program reimbursement." Alden Town also claimed that the 180-day period contained in 42 C.F.R. § 413.30(c) began to run from the date Alden Town received the *Notice of Program Reimbursement*, rather than from the date on the notice. In the alternative, Alden Town argued that the phrase "notice of program pay" in 42 C.F.R. § 413.30(c) was unclear, and that without a published interpretation of "notice of program pay," the regulation was void. Lastly, Alden Town argued that, even if AdminaStar interpreted and applied 42 C.F.R. § 413.30(c) properly, AdminaStar should have waived the applicable time limit in the interests of justice.

The PRRB heard Alden Town's arguments on February 27, 2001. On June 26, 2001, the PRRB issued its decision, rejecting Alden Town's arguments and affirming AdminaStar's

decision to deny Alden Town's request because it was untimely. (R. at 19.) About two months later, the Administrator of the Centers for Medicare and Medicaid Services declined to review the PRRB's decision, thereby making the PRRB's decision the final decision of the Secretary. (R. at 1.) Alden Town now seeks judicial review of that decision pursuant to 42 U.S.C. § 1395oo(f)(1).

## II. Discussion

### A. The PRRB's Interpretation of 42 C.F.R. § 413.30(c)

Alden Town's first argument on appeal challenges the PRRB's interpretation of 42 C.F.R. § 413.30(c). By way of background, at the time AdminaStar sent Alden Town the *Notice of Program Reimbursement*, 42 C.F.R. § 413.30(c) read as follows: "[A skilled nursing facility's] request [for an exception to the routine cost limits] must be made to its fiscal intermediary within 180 days of the date on the intermediary's notice of program reimbursement." 42 C.F.R. § 413.30(c) (1998). Several weeks after Alden Town received the *Notice of Program Reimbursement* from AdminaStar but before Alden Town mailed its exception request to AdminaStar, the Secretary amended the regulation to read: "[A skilled nursing facility] must make its request [for an exception to the routine cost limits] to its fiscal intermediary within 180 days of the date on the intermediary's notice of program pay."[3] 42 C.F.R. § 413.30(c) (1999). The change in the regulation from "reimbursement" to "pay" was inadvertent. Revision of the Procedures for Requesting Exceptions to Cost Limits for Skilled Nursing Facilities and

---

[3] The effective date of the amendment was September 7, 1999. Revision of the Procedures for Requesting Exceptions to Cost Limits for Skilled Nursing Facilities and Elimination of Reclassifications, 64 Fed. Reg. 42,610, 42,610 (Aug. 5, 1999).

- 4 -

Elimination of Reclassifications: Correction, 65 Fed. Reg. 60,104, 60,104 (Oct. 10, 2000). The current version of the regulation, as amended, reads: "[A skilled nursing facility] must make its request [for an exception to the routine cost limits] to its fiscal intermediary within 180 days of the date on the intermediary's notice of program reimbursement." *Id.* Against this, Alden Town contends that the PRRB erred by interpreting "notice of program pay" to mean "notice of program reimbursement" and by not interpreting "within 180 days of the date on the intermediary's notice of program pay" to mean "within 180 days from receipt of the intermediary's notice of program reimbursement."[4]

Judicial review of an administrative agency's interpretation of its own regulation is limited. *Udall v. Tallman*, 380 U.S. 1, 16 (1965); *Ind. Ass'n of Homes for the Aging Inc. v. Ind. Office of Medicaid Policy & Planning*, 60 F.3d 262, 266 (7th Cir. 1995). As long as the agency's interpretation of the regulation does not violate the Constitution or a federal statute, the agency's interpretation must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation. *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (quoting *Udall*, 380 U.S. at 16-17); *Paragon Health Network, Inc. v. Thompson*, 251 F.3d 1141, 1145 (7th Cir. 2001). In other words, assuming the absence of a constitutional or statutory violation, the court's task is not to decide which among competing interpretations best serves the regulation's purpose, but rather to defer to the agency's interpretation unless an alternative reading is compelled by the regulation's plain language or by other indications of the agency's intent at the time of the regulation's promulgation. *Thomas Jefferson Univ.*, 512 U.S. at 512.

---

[4] Alden Town also argues that the PRRB erred by interpreting "make its request" to mean "the date received by AdminaStar." Because resolution of this argument is unnecessary to resolve this case on appeal, we refrain from addressing it.

After review, we sustain the PRRB's interpretation of "notice of program pay" to mean "notice of program reimbursement" because this interpretation is neither plainly erroneous nor inconsistent with 42 C.F.R. § 413.30(c). Reimburse is defined as "to repay" or "to pay back or compensate for money spent or for losses or damages incurred." Webster's II New Riverside University Dictionary 991 (1994). One of the definitions of pay is "to make payment," while another includes "to discharge a debt or obligation." *Id.* at 863. At least Webster's Third New International Dictionary has recognized the similarity of the two words—listing reimburse as a synonym of pay. Webster's Third New International Dictionary 1659, 1914 (1993). Alden Town argues that because the phrase "notice of program pay" has never been used and defined under Medicare law, it cannot now be interpreted to mean "notice of program reimbursement." However, in the absence of a special meaning, this Court is left to consider the plain meaning of "pay," which is sufficiently close to the plain meaning of "reimbursement" to sustain the PRRB's interpretation that "notice of program pay" means "notice of program reimbursement."

We find that the PRRB's interpretation of "notice of program pay" to mean "notice of program reimbursement" is consistent with 42 C.F.R. § 413.30(c) as well. Moreover, the interpretation is necessary to give effect to the 1999 version of 42 C.F.R. § 413.30(c). The regulation, which has been titled *Requests Regarding Applicability of Cost Limits* since 1998, defines the time period during which a skilled nursing facility, such as Alden Town, may request an exception to the routine cost limits imposed by an intermediary, such as AdminaStar. It requires skilled nursing facilities to make such a request "within 180 days of the date on the intermediary's notice of program pay." Unless one interprets "notice of program pay" to mean "notice of program reimbursement," there would have been no time limit in the latter half of

1999 and early half of 2000 during which skilled nursing facilities had to make their requests for an exception to the routine cost limits. Thus, 42 C.F.R. § 413.30(c) (1999) would have served no purpose.

Likewise, we sustain the PRRB's interpretation of when the 180-day time period begins to run. The 1999 version of the regulation states that "[a skilled nursing facility] must make its request [for an exception to the routine cost limits] to its fiscal intermediary within 180 days of the date on the intermediary's notice of program pay." The PRRB held that the 180-day period started from the date on the *Notice of Program Reimbursement*. We cannot imagine a more literal and proper application of this regulation than the one made by the PRRB in this case.

Alden Town makes much ado about nothing by pointing out that a handful of Medicare regulations, other than 42 C.F.R. § 413.30(c), include or have been interpreted to include a date of receipt rule—i.e., the applicable time period in the regulation commences when a party receives a certain document. Section 405.1841(a) of Title 42 of the Code of Federal Regulations, which includes the time period during which a skilled nursing facility must file an appeal to the PRRB, provides one example, and we note that Alden Town cites to other examples as well. The reason we reject this argument by Alden Town is because Alden Town has failed to present a sufficient reason why the PRRB's reliance on the plain language of 42 C.F.R. § 413.30(c), rather than the plain language of one of these other regulations, was in error. Contrary to Alden Town's assertion, the language of the regulations containing a date of receipt rule is different than the language of 42 C.F.R. § 413.30(c), not to mention that the statutes authorizing the creation of some of those regulations contain language different than the statute authorizing the creation of 42 C.F.R. § 413.30(c). *See Taracorp, Inc. v. N.L. Indus.*, 73 F.3d 738, 744 (7th Cir. 1996)

(recognizing that the "choice of substantially different words to address analogous issues signifies a different approach"). An additional ground for rejecting Alden Town's argument is that 42 C.F.R. § 413.30(c) pertains to a distinct event, different than the events covered by 42 C.F.R. § 405.1841(a), or any of the other regulations containing a date of receipt rule. Plainly, to accept Alden Town's argument, as presented in its brief, would require this Court to uniformly interpret all of the Medicare regulations with the language "180 days," regardless of the subject matter and the plain language of each particular regulation and relevant statute. Alden Town cites to no case, and we are not aware of any, that supports such an exercise of judicial authority. For these reasons, we reject Alden Town's position.

In sum, we defer to the PRRB's ruling that Alden Town was required to make its request for an exception to the routine cost limits within 180 days from the date on the *Notice of Program Reimbursement* pursuant to 42 C.F.R. § 413.30(c). The date marked on the *Notice of Program Reimbursement* was August 13, 1999, and 180 days from that date was February 9, 2000. Alden Town did not mail its request for an exception to the routine cost limits until February 12, 2000—183 days after the date on the notice.

### B. Proper Notice of the PRRB's Interpretation

Notwithstanding the above, Alden Town claims that the PRRB's decision should not stand because its interpretation of "notice of program pay" to mean "notice of program reimbursement" was not published according to 5 U.S.C. § 552(a)(1)(D), and thus it would be unfair to hold Alden Town to that interpretation now. Section 552(a)(1)(D) of Title 5 of the United States Code provides that each agency "shall separately state and currently publish in the

Federal Register for the guidance of the public . . . substantive rules of general applicability," "statements of general policy," and "interpretations of general applicability." The statute also states that "[e]xcept to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published." *Id.* § 552(a). The statute embraces the fundamental principle of administrative law that interested parties must have fair notice of the rules governing their conduct before those rules are used to deprive them of their rights. *See, e.g., A.D. Transp. Express, Inc. v. United States*, 290 F.3d 761, 767-68 (6th Cir. 2002); *Trinity Broad. of Fla., Inc. v. FCC*, 211 F.3d 618, 628-29 (D.C. Cir. 2000); *United States v. Chrysler Corp.*, 158 F.3d 1350, 1354 (D.C. Cir. 1998); *Bd. of Trs. of Knox County Hosp. v. Shalala*, 135 F.3d 493, 500-01 (7th Cir. 1998); *Dilley v. Nat'l Transp. Safety Bd.*, 49 F.3d 667, 670 (10th Cir. 1995); *Stuart-James Co. v. SEC*, 857 F.2d 796, 800 (D.C. Cir. 1988); *Knutzen v. Eben Ezer Lutheran Hous. Ctr.*, 815 F.2d 1343, 1351-52 (10th Cir. 1987); *Simpson v. United States*, No. IP 83-1425-C, 1984 WL 201, at *2 (S.D. Ind. Feb. 13, 1984).

We find that the Secretary was not required to publish the PRRB's interpretation of the 1999 version of 42 C.F.R. § 413.30(c) because the PRRB's interpretation essentially restated and did not materially change the procedure for making a request for an exception to the routine cost limits. Alden Town places too much weight on the change from "reimbursement" to "pay." More striking is the fact that the regulation's place and order in the Code of Federal Regulations remained the same, the title and purpose of the regulation remained the same, and, besides one word, the plain language of the regulation remained virtually the same. These factors, when taken together, lead us to conclude that regardless of the change from "reimbursement" to "pay,"

Alden Town was fairly apprised that the PRRB would apply the 1999 version of 42 C.F.R. § 413.30(c) to Alden Town's request for an exception to the routine cost limits, and no further guidance was necessary. *See Dilley*, 49 F.3d at 670; *Stuart-James Co.*, 857 F.2d at 800; *Knutzen*, 815 F.2d at 1351-52; *Simpson*, 1984 WL 201 at *2. Significantly, the PRRB's interpretation of "notice of program pay" to mean "notice of program reimbursement" did not constitute a change of existing law, policy, or practice. Rather, it explained existing law, policy, and practice in a manner that any reasonable skilled nursing facility would anticipate. *See id.*; *cf. D & W Food Ctrs., Inc. v. Block*, 786 F.2d 751, 757-58 (6th Cir. 1986) (commenting that since the Secretary's interpretation departed from the literal language of the statute it would do violence to plain English to characterize the interpretation as only a clarification of existing law).

### C. Waiver

Lastly, Alden Town argues that the PRRB erred by not waiving Alden Town's noncompliance with 42 C.F.R. § 413.30(c). To support this argument, Alden Town cites to *American Farm Lines v. Black Ball Freight Service*, 397 U.S. 532, 539 (1970), for the general principle that "'it is always within the discretion of a court or an administrative agency to relax or modify its procedural rules adopted for the orderly transaction of business before it when in a given case the ends of justice require it.'" *Id.* (quoting *NLRB v. Monsanto Chem. Co.*, 205 F.2d 763, 764 (8th Cir. 1953)).

In *American Farm Lines*, the Supreme Court reversed a district court's decision requiring the Interstate Commerce Commission to strictly comply with a procedural rule designed primarily for the benefit of the commission. 397 U.S. at 537-39. The Interstate Commerce

- 10 -

Commission decided to relax the procedural rule, which required an applicant to list certain names and dates prior to receiving permission from the commission to operate. *Id.* In reversing the district court, the Supreme Court held that the Interstate Commerce Commission was entitled to a measure of discretion in administering its own procedural rules in the manner it deemed necessary to resolve a problem. *Id.* at 538-39.

Hence, *American Farm Lines* concerned an agency's discretion to relax its own procedural rules to promote the ends of justice, not a district court's authority to reverse an agency's decision to not relax its own procedural rules. The case is inapposite. If anything, *American Farm Lines* belies Alden Town's argument. It presents the view that a district court should not be quick to interfere with an agency's decision regarding its own procedural rules. *See, e.g., United States v. Jenks*, 22 F.3d 1513, 1518 (10th Cir. 1994) ("An agency must be given substantial latitude in determining how to implement a statutory mandate."); *S. Motor Carriers Rate Conference v. United States*, 773 F.2d 1561, 1571 (11th Cir. 1985) ("As long as an agency's procedures are reasonably designed to permit the agency to 'discharge [its] multitudinous duties,' a court should not interfere." (quoting *Vermont Yankee Nuclear Power Corp. v. Nat'l Res. Def. Council, Inc.*, 435 U.S. 519, 543 (1978))).

In any event, we fail to see why justice requires a waiver of the time limit in 42 C.F.R. § 413.30(c) given the circumstances of this case. Alden Town's failure to meet the deadline appears to be more a result of poor time management rather than an unfair application of 42 C.F.R. § 413.30(c). Tellingly, when this Court asked Alden Town why its request for an exception to the routine cost limits was untimely, Alden Town cited to administrative problems. (*See* Pl.'s Supplemental Br. at 1-2.) Alden Town never mentioned that during the time leading up

- 11 -

to the date its request was mailed, *it* was confused as to whether 42 C.F.R. § 413.30(c) applied. Furthermore, Alden Town never claimed that it was misled by the Intermediary's actions or statements during this time. Rather, Alden Town comes to us with only after-the-fact arguments as to why 42 C.F.R. § 413.30(c) should not be applied against them.

### III. Conclusion

For the aforementioned reasons, this Court affirms the Secretary's final decision denying Alden Town's request for an exception to the routine cost limits because it was untimely. The PRRB's interpretation of 42 C.F.R. § 413.30(c) was proper, and despite Alden Town's vehement arguments to the contrary, Alden Town had fair notice of what the 1999 version of the regulation required. Nonetheless, this Court recognizes that blind adherence to the plain language of 42 C.F.R. § 413.30(c) may lead to an unfair result, depending on the length of time between the date on the notice of program reimbursement and the date the notice is actually received by the skilled nursing facility. But such unfairness does not exist here. This Court also recognizes that given the hurry-scurry of everyday business affairs, coupled with the differing time limits of the Medicare regulations, the plain language of 42 C.F.R. § 413.30(c) may constitute a trap for the unwary. Unfortunately, Alden Town has not supplied us with any authority, nor have we found any, to effectively rewrite Medicare law on the basis of our "seat of the pants" feeling of unfairness. If such an argument is to succeed, it must be made to a higher authority.

ENTER ORDER:

*[signature]*

MARTIN C. ASHMAN
United States Magistrate Judge

**Dated:** July 1, 2002.

Copies have been mailed to:

| | |
|---|---|
| CHARLES MacKELVIE, Esq.<br>MacKelvie & Associates, P.C.<br>333 West Wacker Drive<br>Suite 950<br>Chicago, IL 60606-1218 | SAMUEL D. BROOKS<br>Assistant U.S. Attorney<br>219 South Dearborn Street<br>Suite 500<br>Chicago, IL 60604 |
| Attorney for Plaintiff | Attorney for Defendant |

AO 450(Rev. 5/85)Judgment in a Civil Case

# United States District Court
## Northern District of Illinois
### Eastern Division

Alden Town Manor Nursing Center      **JUDGMENT IN A CIVIL CASE**

v.     Case Number: 01 C 6649

Tommy G. Thompson

☐     Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■     Decision by Court. This action came to hearing before the Court. The issues have been heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that plaintiff's motion for summary judgment [11-1] and to set aside defendant's PRRB decision [11-2] is denied. Defendant's motion for summary judgment [14-1] is granted. The Secretary's final decision is affirmed.

Michael W. Dobbins, Clerk of Court

Date: 7/1/2002

*Imelda Saccomonto* (signature)

Imelda Saccomonto, Deputy Clerk